UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

OSTROM

CIVIL ACTION

VERSUS

NO. 12-213-JJB-RLB

WORLDVENTURES MARKETING, LLC,
d/b/a WORLDVENTURES, LLC

## RULING

This matter is before the Court on two motions related to an arbitration proceeding. The first is a Motion to Vacate (Doc. 32) brought by the plaintiff, Randy Lee Ostrom ("Ostrom"). The defendant, WorldVentures Marketing, L.L.C., d/b/a WorldVentures, L.L.C. ("WorldVentures"), filed an opposition (Doc. 38) to which the plaintiff filed a reply brief (Doc. 42). The second is a Motion to Confirm Arbitration Award and to Dismiss Lawsuit with Prejudice (Doc. 26) brought by WorldVentures. The Court held oral arguments on the motions on October 21, 2015. The Court's jurisdiction exists pursuant to 28 U.S.C. § 1332. For the reasons stated herein, the plaintiff's Motion to Vacate (Doc. 32) is **DENIED**, and the defendant's Motion to Confirm Arbitration Award and to Dismiss Lawsuit with Prejudice (Doc. 26) is **GRANTED**.

## I. BACKGROUND

In April 2012, Ostrom filed a complaint asserting several claims, including breach of contract, against his employer, WorldVentures. After this Court denied WorldVentures' motion to compel arbitration (Doc. 17), the parties entered into an Arbitration Agreement whereby they agreed to submit Ostrom's claims to binding arbitration. Pursuant to that agreement, both parties selected a New Orleans lawyer, A.J. Krouse, as the arbitrator ("Krouse" or "the Arbitrator").

During the arbitrator selection process, Krouse completed a "Notice of Appointment" form, in which he indicated that he did not have "any professional or social relationship with counsel for

1

any party in the proceeding or the firms for which they work." *Notice of Appointment*, Doc. 32-4. However, in the first prehearing conference, Krouse disclosed to the parties that he knew of WorldVentures' counsel (though only professionally), had interactions with WorldVentures' counsel when counsel worked as a law clerk at a federal court in New Orleans, and that the small legal community in New Orleans meant that he and WorldVentures' counsel had mutual acquaintances and connections. Ostrom's hearing counsel[1] did not object; he stated that he understood and advised that the situation was the same in Michigan. Later in the proceedings, Krouse disclosed that he clerked at Phelps Dunbar as a law student. Ostrom's counsel again expressed "no objection" to Krouse's disclosures. *See E-mail from Steven A. Hilger, to Elizabeth Kidd, Dir. of ADR Servs., Am. Arbitration Ass'n* (August 18, 2014, 12:16 PM), Doc. 38-1 (Ex. B).

Both Ostrom and WorldVentures engaged in extensive discovery prior to the arbitration hearing. Six days before the start of the hearing, WorldVentures supplemented its discovery and disclosed new evidence, which Krouse ruled was admissible. After the proceedings began, several relevant events occurred. First, Krouse allowed WorldVentures to call a witness to testify, despite that witness not being explicitly mentioned in the Witness List. Second, after Ostrom testified on direct examination, Krouse delayed WorldVentures' cross-examination for two days. Finally, according to Ostrom, "a high ranking partner of Phelps Dunbar—Harry Rosenberg—showed up at the arbitration proceeding to visit with Krouse." *Pl.'s Supp. Mem.* 12, Doc. 32-1.

After the arbitration hearing concluded, Krouse issued his decision ("the Award") dismissing with prejudice all of Ostrom's claims against WorldVentures. *See Award of Arbitrator* 36, Doc. 32-8. In the Award, Krouse ruled that Ostrom was not entitled to declaratory relief, and

---

[1] At the hearing, Ostrom was represented by Stephen A. Hilger from Grand Rapids, Michigan ("hearing counsel"). Stephen A. Hilger's signature is on the briefs submitted in connection with this motion. However, it appears that after the arbitration hearing, Ostrom engaged and is currently still represented by Michael E. Platte and Kyle M. Keegan, both from Baton Rouge.

determined that WorldVentures had not breached its contract with Ostrom. *See id.*

After Krouse entered the Award, Ostrom discovered several connections between Krouse's law firm, Frilot L.L.C., and the law firm representing WorldVentures, Phelps Dunbar L.L.P. ("Phelps Dunbar"). Specifically, Ostrom discovered 20 reported cases where Frilot L.L.C. and Phelps Dunbar were involved in litigations together. In 18 of those cases, Frilot L.L.C. and Phelps Dunbar were on the "same side" in the litigation, but represented different parties. *Pl.'s Supp. Mem.* 11, Doc. 32-1. In three cases, the Arbitrator served as an attorney of record on the "same side" as Phelps Dunbar—meaning Krouse and Phelps Dunbar attorneys separately represented individual defendants in those cases. *See List of Cases between Krouse and/or Frilot, L.L.C. and Phelps Dunbar, L.L.P.*, Doc. 32-12. In one of those cases, Krouse himself served as counsel along with Harry Rosenberg (the "high ranking partner of Phelps Dunbar").

## II.   MOTION TO VACATE (Doc. 32)

The Federal Arbitration Act imposes significant limits on judicial review of arbitrator's awards so that arbitration will be an "efficient and cost-effective" alternative to litigation for the parties. *Positive Software Sols., Inc. v. New Century Mortg. Corp.*, 476 F.3d 278, 280 (5th Cir. 2007) (en banc). Thus, judicial review of the arbitration award is exceedingly deferential and vacatur is only available on very narrow grounds. *Brabham v. A.G. Edwards & Sons Inc.*, 376 F.3d 377, 380 (5th Cir. 2004). Vacatur of an arbitrator's award is only available in the four limited circumstances listed in § 10(a) of the FAA:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and

material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10; *Citigroup Glob. Mkts., Inc. v. Bacon*, 562 F.3d 349, 358 (5th Cir. 2009). Ostrom argues that the arbitration award should be vacated because: (1) the Arbitrator was guilty of evident partiality towards the defendant's counsel (§ 10(a)(2)); (2) the Arbitrator was guilty of misconduct (§ 10(a)(3)); and (3) the Arbitrator exceeded his authority (§ 10(a)(4)). *Pl.'s Supp. Mem.* 6, Doc. 32-1.

### A.    Evident Partiality

Ostrom argues that the Award should be vacated under § 10(a)(2) because there was evident partiality in the Arbitrator. Ostrom attempts to demonstrate evident partiality on two grounds: (1) the Arbitrator failed to disclose his professional relationship with the law firm representing WorldVentures, Phelps Dunbar; and (2) a partner from Phelps Dunbar appeared at the arbitration proceedings to "visit" with the Arbitrator. *Id.* at 6–13.

### 1.    *Nondisclosure*

First, Ostrom alleges that Krouse acted with "evident partiality" when he failed to disclose that he and his law firm, Frilot L.L.C., had been involved in litigation with Phelps Dunbar, the law firm representing WorldVentures. *Id.* at 6–12.

In *Commonwealth Coatings Corp. v. Continental Casualty Co.*, the Supreme Court held that an arbitrator's award may be vacated when the arbitrator failed to disclose an ongoing financial relationship between the arbitrator and a party to the arbitration. 393 U.S. 145, 147–49 (1968) (plurality opinion). Cognizant of the need for arbitrators to have specialized knowledge of the

4

subject matter they are arbitrating, the Court did not require arbitrators to "sever all their ties with the business world." *Id.* at 148. Rather, the Court imposed "the simple requirement that arbitrators disclose to the parties any dealings that might create an impression of possible bias." *Id.* at 149.

The Fifth Circuit narrowly construed this disclosure requirement, fearing that if *any* prior relationship between an arbitrator and a party required vacatur, it would "jeopardize the finality of arbitration" because "losing parties would have an incentive to conduct intensive, after-the-fact investigations to discover the most trivial of relationships, most of which they likely would not have objected to if disclosure had been made." *Positive Software*, 476 F.3d at 285. The Fifth Circuit was also concerned that awarding vacatur due to an insubstantial relationship would "rob arbitration of one of its most attractive features apart from speed and finality—expertise." *Id.* With these policy rationales in mind, the Fifth Circuit held that an award may not be vacated because of a "trivial or insubstantial prior relationship between the arbitrator and the parties to the proceeding." *Id.* at 283. Instead, "[t]he draconian remedy of vacatur is only warranted upon nondisclosure that involves a *significant compromising relationship*." *Id.* at 286 (emphasis added). Thus, the primary inquiry for the Court is whether the relationship between Krouse, Frilot L.L.C., and Phelps Dunbar constitutes a "significant compromising relationship."

Ostrom argues that the relationship between Krouse, Frilot L.L.C., and Phelps Dunbar is "evident," and thereby constitutes a significant compromising relationship, because: (1) there are over 20 reported cases where both law firms "have been involved," (2) in 18 of those cases, both firms "were on the same side," and (3) in 3 of these cases, Krouse was an attorney of record. *Pl.'s Supp. Mem.* 11, Doc. 32-1. Meanwhile, WorldVentures argues that these facts do not rise to the level of a "significant compromising relationship." *Def.'s Opp'n* 7, Doc. 38.

5

In *Commonwealth Coatings*, the business relationship between the arbitrator and a party was "repeated and significant"; the party to the arbitration was one of the arbitrator's "regular customers." 393 U.S. at 146. The relationship between the arbitrator and the party "even went so far as to include the rendering of services [by the arbitrator] on the very projects involved" in the underlying dispute. *Id.* The Supreme Court found that the relationship was significant, and vacated the award because the losing party to the arbitration did not learn of the relationship until after the arbitration concluded. *Id.* at 152.

In *Positive Software*, the arbitrator and one of the prevailing party's attorneys both represented Intel six years earlier in a protracted patent litigation in which "Intel was represented by seven law firms and at least thirty-four lawyers." 476 F.3d at 280. The arbitrator and the party's attorney signed the same ten pleadings, but "never attended or participated in any meetings, telephone calls, hearings, depositions, or trials together." *Id.* The Fifth Circuit held that the undisclosed relationship was nothing more than a "trivial former business relationship," not a "significant compromising relationship." *Id.* at 283.

In the instant case, the Court finds that the nondisclosure of the prior relationship between Krouse and Phelps Dunbar does not amount to a "significant compromising relationship." Unlike *Commonwealth Coatings*, there is not a direct financial relationship between Krouse and Phelps Dunbar, nor did Krouse perform any services for Phelps Dunbar on the underlying dispute between Ostrom and WorldVentures. Thus, according to *Commonwealth*, these distinctions lean in favor of finding that the business relationship involved here between Krouse, Frilot L.L.C., and Phelps Dunbar is insubstantial.

Additionally, the facts of this case are sufficiently similar to *Positive Software* to warrant the same result. Like *Positive Software*, Krouse and attorneys from Phelps Dunbar have served as

attorneys in the same case, albeit representing different clients. One such cases was *In re Katrina Levee Litigation*, a case involving over 413 different parties. *See List of Cases between Krouse and/or Frilot, L.L.C. and Phelps Dunbar, L.L.P.*, Doc. 32-12. This large and complex litigation is similar to the Intel patent litigation in *Positive Software*, which was held to be too insubstantial to vacate the arbitrator's award.

Unlike *Positive Software*, Krouse and Phelps Dunbar have been involved together in more than the one litigation; here, Krouse himself and Phelps Dunbar served as attorneys on the same case three times, and Krouse's law firm, Frilot L.L.C., was involved in litigation up to 20 separate times with Phelps Dunbar attorneys. While this indicates a marginally closer relationship than that in *Positive Software*, the Court is not convinced that this distinction justifies a different result. The overwhelming majority of the litigations involved other attorneys at Frilot L.L.C., not Krouse himself. Also, neither Krouse himself nor Frilot L.L.C. have ever represented the same client as Phelps Dunbar in any of the aforementioned litigations. Furthermore, there is no evidence that any of the attorneys signed the same pleadings, as was the case in *Positive Software*. Nor is there evidence that the attorneys attended meetings, telephone calls, hearings, depositions, or trials together. All of these facts demonstrate that the undisclosed relationship in this case, like the undisclosed relationship in *Positive Software*, is too trivial to warrant vacatur.

Ultimately, the relationship that Krouse failed to disclose does not amount to a "significant compromising relationship between the parties," required to warrant vacatur. *Positive Software*, 476 F.3d at 283. Vacatur of the Award on this trivial, insubstantial relationship would jeopardize the finality of arbitration and rob arbitration of the attractive features of speed, finality, and expertise. *See id.*

7

### 2.    *Rosenberg's "Visit"*

Second, Ostrom argues that the Arbitrator was "evidently partial" to the defendant because a senior partner at Phelps Dunbar, Harry Rosenberg, appeared at the arbitration proceedings to "visit" with the Arbitrator. *Pl.'s Supp. Mem.* 12–13, Doc. 32-1. According to Ostrom, "Rosenberg's stopping by to see Krouse in the midst of the arbitration hearing is further evidence that there is a relationship between the arbitrator and the defendant's law firm that should have been disclosed." *Id.* While unclear, it appears that Ostrom attempts to argue that Rosenberg's visit is evidence of "actual bias." *See id.*

WorldVentures argues that Harry Rosenberg's brief appearance at the arbitration proceedings does not evidence partiality. According to WorldVentures, Rosenberg was involved in the case as demonstrated by Rosenberg's billing records—he spent 15 hours working on this case. *Def.'s Opp'n* 11, Doc. 38. WorldVentures also asserts that Rosenberg's appearance was not to "visit" with the Arbitrator, but to report that a scheduling conflict for the Phelps Dunbar attorney of record had been resolved. *Id.*

To establish evident partiality based on actual bias, Ostrom must "produce specific facts from which a reasonable person would have to conclude that the arbitrator was partial to one party." *Householder Grp. v. Caughran*, 354 F. App'x 848, 852 (5th Cir. 2009) (citations and internal quotations omitted). This is an "onerous burden, because the urging party must demonstrate that the alleged partiality is direct, definite, and capable of demonstration rather than remote, uncertain or speculative." *Id.*

Other than Rosenberg's appearance at the arbitration hearing, Ostrom has failed to come forth with any other evidence of bias. Rosenberg's appearance is insufficient to meet the onerous burden of demonstrating partiality because it is remote, uncertain, and speculative. Even when

considered in combination with the undisclosed relationship between the Arbitrator and Phelps Dunbar, such evidence is insufficient to demonstrate direct and definite partiality. Therefore, Ostrom has failed to demonstrate that the Award should be vacated on the grounds of actual bias. *Householder*, 354 F. App'x at 852.

### B.   Arbitrator Misconduct

An arbitrator's award may be vacated "where the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(3). The Arbitrator has "broad discretion to make evidentiary decisions." *Int'l Chem. Workers Union v. Columbian Chems. Co.*, 331 F.3d 491, 497 (5th Cir. 2003). The evidentiary decision in question must have "so affected [the party's] rights . . . that it may be said he was deprived of a fair hearing." *Forsythe Int'l, S.A. v. Gibbs Oil Co. of Tex.*, 915 F.2d 1017, 1023 (5th Cir.1990) (citations omitted). Ostrom argues that the Arbitrator engaged in misconduct by: (1) allowing WorldVentures to introduce a previously undisclosed witness; (2) allowing WorldVentures to supplement its discovery responses six days prior to arbitration; and (3) delaying the cross-examination of Ostrom for two days.

### 1.   *Introducing Undisclosed Witness*

At the arbitration hearing, WorldVentures called Roberto Canales ("Canales") to testify, to which Ostrom objected. The Arbitrator held oral arguments on whether Canales should be allowed to testify at the arbitration hearing. On the Witness List prepared prior to the hearing, WorldVentures indicated that it would call, "Any witness listed or identified by any party in response to interrogatories, requests for production of documents, request for admissions, or any other form of discovery including depositions and third party subpoenas." *Prelim. Witness List*

9

¶ 12, Doc. 32-7. In responses to interrogatories and other discovery responses, WorldVentures identified Canales as an "Officer/Senior Level Executive of WorldVentures." *Arbitrator's Order* 1, Doc. 32-13. Relying on these facts, the Arbitrator overruled the objection and allowed Canales to testify because Canales was an Officer/Senior Level Executive of WorldVentures, and the record was "devoid of any evidence that WorldVentures prevented Ostrom from deposing any witness listed on [the] WorldVentures Witness List or in its discovery responses." *Id.* at 2–3. Ostrom alleges that by allowing Canales to testify, the Arbitrator failed to ensure that Ostrom received a fair hearing, and therefore engaged in misconduct. *Pl.'s Supp. Mem.* 14, Doc. 32-1.

Ostrom has not shown that the Arbitrator's decision to allow Canales to testify "so affected his rights that it may be said that he was deprived of a fair hearing." The Arbitrator held oral arguments on this issue and carefully considered the position of both parties before making his decision. Therefore, Ostrom is not entitled to vacatur due to the Arbitrator allowing Canales to testify.

### 2.    *Supplementing Discovery*

Arbitrators have an affirmative duty to "insure that relevant documentary evidence in the hands of one party is fully and timely made available to the other side. . . . a failure to discharge this simple duty would constitute a violation of FAA § 10(a)(3), where a party can show prejudice as a result." *Chevron Transp. Corp. v. Astro Vencedor Compania Naviera, S. A.*, 300 F. Supp. 179, 181 (S.D.N.Y. 1969).

According to Ostrom, WorldVentures revealed a "smoking gun" email just six days before arbitration. Ostrom's suit alleged that individuals employed with WorldVentures were guilty of cross-sponsoring, and that WorldVentures failed to address cross-sponsoring properly. The alleged "smoking gun" email stated that WorldVentures "did not waive the cross-sponsoring policy for

any reason."[2] *E-mail from Amber McGregor, Compliance Specialist, WorldVentures, to Shush Arya, et. al.* (January 18, 2011, 2:37:15 PM), Doc. 32-6. According to Ostrom, this email would have assisted him in preparation for arbitration, and the statement "undermines the [WorldVentures'] entire argument that it did not breach its contract by failing to enforce the provision which prohibited cross-sponsoring." *Pl.'s Supp. Mem.* 16, Doc. 32-1.

The Court assumes, for the purposes of this ruling, that the information was not timely or properly produced to Ostrom so that it could be utilized throughout the discovery process or in preparation for the arbitration hearing. Nevertheless, the Court finds that Ostrom has failed to show prejudice as a result. First, during the arbitration hearing Ostrom was able to call and cross-examine witnesses about the email. Second, Ostrom was able to submit post-hearing briefs where Ostrom could have used this email to support his case. Furthermore, the Court fails to see how this email is a "smoking gun" or how the email "undermines WorldVentures' entire argument." The email appears to be more favorable to WorldVentures' position than Ostrom's because it shows that WorldVentures does not condone cross-sponsoring under any circumstances. Therefore, vacatur is not warranted on this ground.

### 3.    *Delaying Cross-Examination*

Ostrom testified on the morning of November 18, 2014 (a Wednesday). After Ostrom's attorney finished his line of questioning, "the parties took a lunch break under the assumption that the cross examination would begin upon the return from lunch." *Pl.'s Supp. Mem.* 16, Doc. 32-1. The Arbitrator "decided to unilaterally change the normal procedure for arbitration and delayed Ostrom's cross exam for two days." *Id.* Ostrom argues that the Arbitrator's decision to delay the

---

[2] Cross-sponsoring or cross-recruiting is the practice of enrolling an individual or entity that is already a distributor; it is a method to bypass the rules that address changes such as change of enroller, transfer of ownership or change of placement. *Award of Arbitrator* 10, Doc. 32-8.

cross-examination allowed WorldVentures additional time to prepare, and provided a means for WorldVentures to introduce all expert testimony prior to questioning Ostrom. *Id.* WorldVentures points out that all parties agreed in advance that the afternoon of Wednesday, November 18 was reserved for a video deposition and expert testimony, and Ostrom's hearing counsel "insisted that his expert witness complete his testimony on that date, because his expert's travel arrangements did not allow him to remain for an additional day of proceedings." *Def.'s Opp'n* 18, Doc. 38.

The Court finds that this was an evidentiary decision within the discretion of the Arbitrator, and Ostrom has failed to adequately demonstrate that the decision to delay cross-examination so affected his rights that he was deprived of a fair hearing.

## C.      Exceeding Authority

Finally, Ostrom argues that the arbitration award should be vacated under 9 U.S.C. § 10(a)(4) because the Arbitrator exceeded his authority. Ostrom argues that the Arbitrator exceeded his authority on two independent grounds: (1) the Award ignores the plain language of the written waiver provision found in the WorldVentures Policies and Procedures, and (2) the Arbitrator based his breach of contract decision on Massachusetts, rather than Louisiana law, which was contrary to the parties' stipulation that Louisiana law would govern. *Pl.'s Supp. Mem.* 20, Doc. 32-1. According to Ostrom, when both of these actions are viewed together, there is "no rational way to explain the remedy handed down by the arbitrator as a logical means of furthering the aims of the contract," and thus the Award must be vacated. *Id.* at 21.

Under § 10(a)(4), a court may vacate an arbitration award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). The party challenging an arbitrator's award under § 10(a)(4) carries a "heavy burden." *BNSF R. Co. v. Alstom Transp., Inc.*, 777 F.3d

785, 788 (5th Cir. 2015) (quoting *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2068 (2013)).

### 1.    *Contract Interpretation*

When a party challenges an arbitrator's interpretation of a contract under § 10(a)(4), it is not enough to show that the arbitrator "committed an error—or even a serious error." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010). An arbitral decision "even arguably construing or applying the contract" must stand, "regardless of a court's view of its (de)merits." *Oxford Health*, 133 S. Ct. at 2068. Accordingly, a district court's review of an arbitrator's award under § 10(a)(4) is limited to the "sole question . . . [of] whether the arbitrator (even arguably) interpreted the parties' contract." *BNSF*, 777 F.3d at 788 (quoting *Oxford Health*, 133 S. Ct. at 2068).

In determining whether the arbitrator interpreted the contract, district courts should consult the arbitrator's award itself for relevant evidence, as well as the submission of the issue to the arbitrator to determine his authority. *OMG, L.P. v. Heritage Auctions, Inc.*, 612 F. App'x 207, 210 (5th Cir. 2015), *cert. denied*, 136 S. Ct. 503; *BNSF*, 77 F.3d at 788. The Fifth Circuit has described several factors that indicate whether an arbitrator was arguably interpreting the underlying contract: "(1) whether the arbitrator identifies her task as interpreting the contract; (2) whether she cites and analyzes the text of the contract; and (3) whether her conclusions are framed in terms of the contract's meaning." *BNSF*, 777 F.3d at 788. The district court must keep in mind, however, that in evaluating the available evidence district courts "must resolve all doubts in favor of arbitration." *Id.*; *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1320 (5th Cir. 1994).

Here, the parties submitted their dispute to arbitration, whereby Ostrom argued that WorldVentures breached its contract with Ostrom by failing to enforce its own prohibition on

cross-sponsoring. Due to the nature of the Arbitration Agreement and the substance of the complaint, the Arbitrator was required to review the WorldVentures Policies and Procedures. The Arbitrator identified his task as such, and used well-recognized tools of contract interpretation to analyze WorldVentures' Policies and Procedures before ultimately concluding that WorldVentures did not commit a breach of contract. *See Award of Arbitrator* 23–26, Doc. 32-8. After reviewing the Award, it is exceedingly clear that the Arbitrator construed and applied the contract, and therefore it must stand regardless of the Court's view of its merits. *Oxford Health*, 133 S. Ct. at 2068. Accordingly, Ostrom cannot obtain vacatur on this ground.

### 2.    *Reliance on Persuasive Authority*

Finally, Ostrom argues that he is entitled to vacatur because contrary to the parties' stipulation that Louisiana law would govern, the Arbitrator "based his breach of contract decision on Massachusetts law." *Pl.'s Supp. Mem.* 20, Doc. 32-1. Generally, parties may limit the scope of arbitration through contract. *21st Fin. Servs., L.L.C. v. Manchester Fin. Bank*, 747 F.3d 331, 336 (5th Cir. 2014). If the contract creates a plain limitation on the authority of an arbitrator, then the arbitrator exceeds his power by ignoring such limitation, and the Court may therefore vacate the award. However, "[a] reviewing court examining whether arbitrators exceeded their powers must resolve all doubts in favor of arbitration." *Id.*

In the Arbitration Agreement and at the arbitration hearing, the parties stipulated that Louisiana substantive law would govern this matter.[3] *See Award of Arbitrator* 3, Doc. 32-8. In the Award, the Arbitrator begins his analysis of the contract by citing to six articles of the Louisiana Civil Code, six Louisiana cases, and one federal case applying Louisiana law. *Id.* at 23–30. After

---

[3] The Court assumes, for the purposes of this ruling, that this provision created a "plain limitation." However, the Court is skeptical that such a limitation would preclude the Arbitrator from consulting persuasive authority from another jurisdiction.

setting forth and applying Louisiana law, the Award states: "The Arbitrator finds that the First Circuit decision in *Okmyansky v. Herbalife International of America Inc.*, 415 F.3d 154 (1st Cir. 2005) is persuasive in this case. Although the contract in *Okmyansky* was interpreted under Massachusetts law, the facts and the contracts at issue are analogous." *Id.* at 27. The Arbitrator ultimately concluded that "the same result in *Okmyansky* is reached under Louisiana law in the instant case." *Id.* at 31.

In context, it is clear that the Arbitrator did not base his decision solely on Massachusetts law. Rather, the Arbitrator interpreted and applied the contract according to Louisiana law and used Massachusetts law only as persuasive authority. The reliance on persuasive authority from another jurisdiction to support the conclusion reached does not mean the Arbitrator wholly abandoned his duty to interpret and apply Louisiana law. Even if it could be said that the interpretation of Massachusetts law predominated his analysis, the interpretation and application of Louisiana law related to contract interpretation would render this case one where it is "doubtful" that the Arbitrator exceeded his authority. In such cases where doubt exists as to whether the arbitrator exceed his authority, the Court must resolve such doubt in favor of arbitration. *21st Fin. Servs.*, 747 F.3d at 336. Therefore, the Award may not be vacated on this ground.

\* \* \*

In sum, Ostrom has failed to establish that the Award should be vacated under § 10(a). First, Ostrom failed to establish that he is entitled to have the Award vacated under the "evident partiality" standard in § 10(a)(2). The relationship between the Arbitrator and Phelps Dunbar is too trivial and insubstantial to justify vacatur of the Award, and the plaintiff failed to demonstrate that Rosenberg's appearance during the arbitration indicated evident partiality. Second, Ostrom did not establish arbitrator misconduct under § 10(a)(3). Ostrom failed to prove that the Arbitrator

engaged in misconduct by allowing WorldVentures to introduce a witness, supplement its discovery responses, and by delaying Ostrom's cross-examination. Furthermore, Ostrom failed to demonstrate how such evidentiary decisions caused prejudice. Finally, Ostrom did not prove that the Arbitrator exceeded his authority under § 10(a)(4). The Arbitrator construed and applied the contract according to the parties' agreement, and pursuant to Louisiana Law, while merely using Massachusetts law as persuasive authority. Therefore, Ostrom has no grounds to warrant vacatur under 9 U.S.C. § 10. Accordingly, the plaintiff's Motion to Vacate (Doc. 32) is **DENIED**.

### III.   MOTION TO CONFIRM (Doc. 26)

Any party to an arbitration may seek an order confirming an arbitrator's award if the "parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to arbitration." 9 U.S.C. § 9. According to § 9, the Court *must* grant the order unless the award is "vacated, modified, or corrected" in accordance with § 10 or § 11.

WorldVentures has moved to confirm the Award entered by the Arbitrator in its favor, and seeking an order dismissing with prejudice all of Ostrom's claims. In the Arbitration Agreement, the parties agreed, "Judgment on the award rendered by the Arbitrator may be, if necessary entered in the Litigation." *Arbitration Agreement* ¶ 7, Doc. 26-2. As discussed above, Ostrom is not entitled to have the Award vacated, modified, or corrected based upon any of the grounds contained in § 10. Therefore, pursuant to § 9, the Court must grant the order confirming the Award. Accordingly, the defendant's Motion to Confirm Arbitration Award and to Dismiss Lawsuit with Prejudice (Doc. 26) is **GRANTED**.

### IV.   CONCLUSION

For the reasons stated herein, the plaintiff has failed to demonstrate that the Award should be vacated under 9 U.S.C. § 10. In the Arbitration Agreement, the parties agreed that the

16

Arbitrator's award would be enforceable by a judgment of the court, and therefore the Court must confirm the Award. Accordingly, the plaintiff's Motion to Vacate (Doc. 32) is **DENIED**, and the defendant's Motion to Confirm Arbitration Award and to Dismiss Lawsuit with Prejudice (Doc. 26) is **GRANTED**. Within two days, the parties shall jointly submit a proposed form of judgment.

Signed in Baton Rouge, Louisiana, on February 4, 2016.

_____

**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**